**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **PATRICIA DODD** | § | |
| | § | |
| *Plaintiff* | § | |
| VS. | § | |
| | § | **CIVIL ACTION NO. 4:21-CV-02216** |
| **ROBERT GLASER, IN HIS OFFICIAL** | § | |
| **CAPACITY, CESAR MALDONADO, IN** | § | **JURY DEMANDED** |
| **HIS OFFICIAL CAPACITY, AND** | § | |
| **HOUSTON COMMUNITY COLLEGE** | § | |
| | § | |
| *Defendants* | § | |

**PLAINTIFF DODD'S EMERGENCY MOTION FOR PROTECTIVE ORDER AND/OR FOR TEMPORARY INJUNCTIVE RELIEF, AND REQUEST TO SHORTEN TIME**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Plaintiff Patricia Dodd ("Dodd") files the Motion for Protective Order and/or For Temporary Injunctive Relief, and Request to Shorten Time for the following reasons:

**SUMMARY OF EMERGENCY MOTION**

1. In this litigation, Dodd alleges and seeks redress for, among other things, violations of her civil rights and sexual harassment at the hands of Defendants. Defendant Robert Glaser, while serving at the Chairman of Houston Community College's Board of Trustees, repeatedly had sex with Plaintiff in exchange for his assistance with her keeping her job. The grotesque allegations in

1

this case are more fully set forth in Plaintiff's live complaint and are incorporated by reference in this emergency motion.

2.  Defendant Houston Community College ("HCC") and its officials are actively threatening witnesses who would come forward to provide evidence about the grotesque sexual misconduct alleged in this. Specifically, Plaintiff has disclosed the identities of two HCC employees— a former HCC police officer and another a current professor at HCC— who provided sworn affidavits about elements of the misconduct alleged against Defendants Glaser and Maldonado. *See* Exhibits 1 and 2 attached. After Plaintiff produced those affidavits in this case, HCC officials threatened the witness who is still employed by HCC with disciplinary action, including possible termination, relating to the information disclosed in his affidavit. Specifically, HCC advised the witness that because he had not previously disclosed what he knew about Glaser's sexual misconduct toward Plaintiff—i.e., Glaser's masturbation video sent to Plaintiff—the witness was in violation of Texas state law and now subject to adverse employment action, including possible termination. A copy of the HCC document is attached as Exhibit 3.

3.  HCC's threat has now become reality. On Friday, November 19, 2021, HCC placed the witness on administrative leave from his job because of the evidence he provided in this litigation. Such blatant intimidation by HCC is intended to, and is, having a chilling effect on other eye witnesses coming forward with evidence of

the rampant sexual misconduct taking place at HCC. If allowed to continue, HCC's intimidation tactics will interfere with this Court's control over the evidence in this case and rob the litigants of a fair trial. Unless the Court enjoins HCC's witness intimidation tactics this campaign of terrorizing potential employee witnesses from coming forward and giving evidence will be ruinous to a fair trial being had in this case and imperil this Court's jurisdiction over necessary witnesses to provide evidence in this case.

4. Emergency injunctive relief is requested to stop Defendants' conduct.

## SPECIFIC ALLEGATIONS

5. On August 24, 2021, Donny Leveston ("Leveston"), a professor employed by HCC, executed an affidavit in which he swore that Dodd had shared contemporaneous information with him about a video Defendant Glaser had sent to her showing him masturbating until he climaxed. In his affidavit, Leveston further recounted a conversation he had with Dodd during which she expressed her disgust and severe emotional and mental anguish arising from receiving such an obscene video. *See* Dkt. 29-1.

4. On the same day Leveston executed his affidavit in this case, Dodd served HCC's counsel with the affidavit as an exhibit to her Third Supplemental Rule 26(a)(1) Disclosures. *See* Dkt. 29.

6. A month later, by memorandum dated September 27, 2021, HCC's Title IX Coordinator, James David Cross ("Cross"), notified Leveston that Cross was filing a complaint that Leveston had not previously and "promptly" reported his conversation with Dodd to either Cross or his Deputy Title IX Coordinator. The memorandum further informed Leveston that HCC would institute an investigation into Leveston's alleged failure to report this conversation, and that Leveston was subject to "mandatory termination of employment and potential criminal liability." A true and correct copy of the memorandum is attached to this Motion as Exhibit 3.

7. In his memorandum, Cross invoked TEX. EDUC. CODE § 51.252(a) (enacted in 2019 and sometimes referred to as "SB 212" after the Texas Senate bill which the statute codified), which provides in full:

> An employee of a postsecondary educational institution who, *in the course and scope of employment*, witnesses or receives information regarding the occurrence of an incident that the employee reasonably believes constitutes sexual harassment, sexual assault, dating violence, or stalking and is alleged to have been committed by or against *a person who was a student enrolled at or an employee of the institution at the time of the incident* shall *promptly* report the incident to the institution's Title IX coordinator or deputy Title IX coordinator.

(Emphasis added)  *Id*.

8. It is not at all clear—and HCC certainly has not established—that the statute applies to the conversation between Leveston and Dodd for several reasons. First, Leveston's affidavit does not mention the date upon which his conversation

4

with Dodd occurred, so it is not possible to determine whether Leveston's affidavit itself constitutes a "prompt" report of the conversation. Moreover, the statute does not define "promptly," *see* TEX. EDUC. CODE § 51.251 (setting forth definitions applicable to the statute), and thus does not provide any bright line time limit in which such reporting must occur.

9. Second, nothing in Leveston's affidavit indicates that his conversation with Dodd occurred while Leveston was acting "in the course and scope of [his] employment" with HCC as the statute requires.

10. Finally, Defendant Glaser is plainly not a student enrolled at HCC, and HCC's attorney are arguing in this case that Glaser, as an *elected* HCC trustee at the time of his sexual misdeeds, was not an "employee" of HCC and, thus, was exempt from any charge of sexual harassment under HCC policy. If this is true, which Plaintiff submits it is not true—then the putative argument that the above statute requires termination or criminal action is erroneous.

11. What *is* clear, however, is that the memorandum specifically threatens Leveston with termination of his employment, as well as the potential referral of criminal charges, simply because he exercised his right to provide evidence supporting Dodd's allegations in this litigation. It is certainly reasonable for Dodd to anticipate HCC to threaten other employee witnesses with employment

termination and referral of criminal charges should they, like Leveston, have the temerity—or bravery—to testify against the interests of HCC in this case.[1]

12. HCC's conduct here is of the same ilk decried by the Fifth Circuit in *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1578 (5th Cir. 1989), in which the court explained:

> When an employee testifies before an official government adjudicatory or fact-finding body he speaks in a context that is inherently of public concern. "Our judicial system is designed to resolve disputes, to right wrongs. We encourage uninhibited testimony, under penalty of perjury, in an attempt to arrive at the truth." *Reeves v. Claiborne County Board of Education*, 828 F.2d 1096, 1100 (5th Cir.1987). We would compromise the integrity of the judicial process if we tolerated state retaliation for testimony that is damaging to the state. If employers were free to retaliate against employees who provide truthful, but damaging, testimony about their employers, they would force the employees to make a difficult choice. Employees either could testify truthfully and lose their jobs or could lie to the tribunal and protect their job security. Those able to risk job security would suffer state-sponsored retaliation for speaking the truth before a body entrusted with the task of discovering the truth. See *Smith v. Hightower*, 693 F.2d 359, 368 (5th Cir.1982). Those unwilling or unable to risk unemployment would scuttle our efforts to arrive at the truth. *Reeves*, 828 F.2d at 1100. Thus, a grand jury witness speaks on matters of public concern when he furnishes truthful information to the grand jury on a matter that the grand jury properly is investigating. *Neubauer v. City of McAllen*, 766 F.2d 1567, 1572-73 n. 5 (5th Cir.1985). Likewise, when one state employee testifies in another employee's civil action against their

---

[1] In addition to threatening potential witnesses with termination or criminal charges if they come forward with evidence in this case, after plaintiff counsel produced the affidavit of Former HCC Officer Fredrick Portis in this case—an affidavit that revealed he had captured his attempted interview of Maldonado and Melissa Gonzales on his police body worn camera, the body cam footage of other plaintiffs suing HCC are now being selectively reviewed and those plaintiffs being threatened with disciplinary action. Indeed, at least one has been placed on administrative leave as a result of such selective viewing. This is just another tactic intended to intimidate and silence witnesses.

mutual state employer, the witness's testimony constitutes a matter of public concern for First Amendment purposes. *Reeves*, 828 F.2d at 1100-1101. See also *Smith*, 693 F.2d at 368 (holding that the First Amendment protects a witness's right to testify truthfully at a criminal trial.) The goal of grand jury proceedings, of criminal trials, and of civil trials is to resolve a dispute by gathering the facts and arriving at the truth, a goal sufficiently important to render testimony given in these contexts speech "of public concern."

13. Like the state entity in *Johnston*, HCC here is attempting to subvert this Court's efforts to arrive at the truth by threatening Leveston, and other potential employee witnesses by way of Leveston's example, with termination and potential criminal charges. This Court should not, indeed must not, countenance such conduct.

14. On November 19, 2021, Plaintiff Counsel was informed that Donny Leveston was placed on administrative leave due to the affidavit he provided in support of the allegations in this case.

## REQUESTED RELIEF

15. Plaintiff asks the Court to shorten the time to hear this emergency motion and set it for expedited consideration. The matters at issue in this motion are paramount to a fair trial and to the protection of this Court's control and jurisdiction over this case.

16. Dodd respectfully asks that the Court enter an immediate order prohibiting HCC from (a) threatening or actually taking any adverse employment

7

action against any former or present employee or vendor who provides evidence in this case, (b) order HCC and its agents to immediately reinstate Mr. Leveston to his employment and vacate the administrative leave imposed against him because of his testimony in this case, (c) enjoin HCC from further threatening or actually referring any criminal charges against Leveston or any other HCC employee for providing truthful evidence in this case, and (d) order HCC to immediately circulate to all HCC employees and vendors—within 24 hours of the entry of the court's order— a *court-approved notice* advising any and all witnesses to the events alleged in this case that they will not be threatened, retaliated against, or suffer any adverse employment action by HCC or any of HCC's agents for providing truthful evidence in this case.[2]

*WHEREFORE, PREMISES CONSIDERED,* Dodd respectfully requests the Court shorten the time to hear this motion, grant the above and foregoing relief, and enter a protective order as specified above or as determined by the court.

    Respectfully submitted,

    **THE HALL LAW GROUP, PLLC**

    */s/ Benjamin L. Hall, III*
    **Benjamin L. Hall, III**
    State Bar No. 08743745
    Federal Bar No. 8787
    bhall@bhalllawfirm.com
    **William L. Van Fleet II**
    State Bar No. 20494750

---

[2] Such a notice is needed to correct and address the clear chilling effect HCC's prior tactics have had on witnesses providing evidence in this case.

Federal Bar No. 3670
bvfleet@comcast.net
THE HALL LAW GROUP
530 Lovett Blvd.
Houston, Texas 77006
Telephone: (713) 942-9600
Facsimile: (713) 942-9566

-AND-

**THE HITTNER GROUP, PLLC**

**George J. Hittner**
State Bar No. 24038959
S.D. TX No. 431901
george.hittner@thehittnergroup.com
P.O. Box 541189
Houston, Texas 77254
Phone: (713) 505-1003

-AND-

**JIMMY ARDOIN & ASSOCIATES, PLLC**

**James Ardoin**
State Bar No. 24045420
S.D. TX No. 571281
4900 Fournace Place, Suite 550
Houston, Texas 77401
Phone: (713) 574-8900
Toll Free: (888) 701-8509
Email: jimmy@jimmyardoinlaw.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

The undersigned counsel certifies that Attorney Ryan Finnegan conferred by telephone with Defense Counsel Melissa Goins, after attempts to reach Mr. Paul Lamp were unsuccessful on November 19, 2021, and Ms. Goins stated that Defendants opposed the relief requested in the Motion. In a prior call between Mr. Lamp and Attorney Bill Van Fleet on November 9, 2021, Mr. Lamp communicated the same sentiment that Defendants oppose the motion and the requested relief.

/s/Benjamin L. Hall III
Benjamin L. Hall, III

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies that the foregoing Motion complies with the word-count limitations prescribed by this Court because as it contains 1857 words and it does not exceed the Court's word count excluding those portions excepted by the Court.

*/s/ Benjamin L. Hall, III*
Benjamin L. Hall, III

**CERTIFICATE OF SERVICE**

The undersigned certifies that the above and foregoing Motion for Protective Order was served upon all counsel of record by ECF in accordance with the Federal Rules of Civil Procedure on November 19, 2021.

*/s/Benjamin L. Hall III*
Benjamin L. Hall, III