United States District Court
Southern District of Texas
**ENTERED**
January 16, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| PATRICIA DODD, § | |
| § | |
| Plaintiff. § | |
| § | |
| V. § | CIVIL ACTION NO. 4:21-cv-02216 |
| § | |
| ROBERT GLASER, *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is a Motion for Summary Judgment by Defendants Houston Community College ("HCC"), Dr. Cynthia Lenton-Gary ("Lenton-Gary"), and Dr. Margaret Ford Fisher ("Fisher") (collectively, "Defendants").[1] *See* Dkt. 93. Having reviewed the briefing, the record, and the applicable law, I recommend the motion be **GRANTED**.

## BACKGROUND

This is an employment discrimination and sexual harassment case. HCC is a public college governed by a nine-member Board of Trustees, on which Glaser served as an elected member from 2014 to 2023. The Board elected Glaser as Chair in January 2021 and removed him as Chair in June 2021. Maldonado held the position of Chancellor from 2014 until 2023. Plaintiff Dr. Patricia Dodd ("Dodd") worked as an English instructor at HCC for eight years, until 2021 when HCC

---

[1] Plaintiff's Original Complaint named Robert Glaser ("Glaser") and Dr. Cesar Maldonado ("Maldonado") in their official capacities as the Chair of HCC's Board of Trustees and Chancellor of HCC, respectively. Lenton-Gary began her tenure as Chair on January 19, 2022, and Fisher began her tenure as HCC's Interim Chancellor on September 1, 2023. Both were automatically substituted as defendants when they assumed their official roles. *See* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

declined to renew her contract. Dodd's immediate supervisor was Dr. Alan Ainsworth ("Ainsworth").

In May 2019, HCC learned that Dodd had been arrested for misdemeanor assault earlier that month. HCC's Talent Relations Director Thomas Anderson informed Dodd via letter that her failure to report this arrest was a "violation of [HCC's] employment criteria and HCC Policy DH (Local) Employee Standards of Conduct" that "may lead to discipline up to and including termination of employment." Dkt. 93-16 at 2.

In November 2019, Dodd and Glaser met for the first time. On January 19, 2020, Dodd and Glaser went to a bar and had drinks. Dodd awoke the following morning with "sore thighs." Dkt. 100-1 at 70. This was the beginning of a sexual relationship between Dodd and Glaser—the consensual nature and details of which are hotly disputed. Among other things, Dodd traveled with Glaser to Washington, D.C., where they shared a hotel room and had sex. Glaser contends that he and Dodd had a consensual sexual relationship; Dodd asserts that she felt compelled to engage in unwelcome sex acts to keep her job. Their sexual relationship continued until April 22, 2020, when Glaser told his wife about his relationship with Dodd. Glaser's last text message to Dodd was sent on May 29, 2020.

On July 10, 2020, Dodd mentioned to Ainsworth in an email that she was "not comfortable doing video[ conference]s from home." Dkt. 93-36 at 3. Dodd wrote that she had "been stalked before, even by HCC people." *Id.* Ten days later, Renee Mack ("Mack"), the Manager of HCC's Office of Institutional Equity ("OIE"), emailed Dodd to let her know that OIE "was notified by a mandatory reporter that you are or have been a victim of stalking." Dkt. 93-37 at 3. On July 22, 2020, Dodd forwarded Mack her July 10 email exchange with Ainsworth, writing:

> Per our conversation, I did not want to point the finger at someone I had been "seeing" who is associated with HCC for fear of reprisal. He is in a position of elected power, and I am just a faculty member. He . . . has not come back to my house recently, so I think everything is stabilized.

2

Dkt. 93-36 at 2.

In September 2020, Dodd told Mack that she was "at the point where I will have to file a complaint against [Ainsworth]." Dkt. 93-39 at 3. Mack encouraged Dodd to complete an Intake Questionnaire with HCC, but Dodd said her "next step would be an EEOC [complaint]." *Id.* at 2. Mack responded:

> It is always your right to go to EEOC a[t] any time. However, my experience has been one of the first questions they will ask is . . . "Have you gone through your internal processes to try and resolve the concern?" If it's about alleged discrimination, your honest answer would have to be no.

*Id.* Dodd thanked Mack for her response and said:

> I have reported these issues to HR to no avail. When [Ainsworth] yelled at me and I reported, nothing was done. When he took away my extra classes nothing was done. I have been treated worse since I filed ADA. I have two classes starting today. If I have to fill out more paperwork, I will have to do it when I have more time.

*Id.*

On April 14, 2021, Dodd was arrested for assault and again failed to report the arrest to HCC. On April 20, 2021, HCC placed Dodd on paid administrative leave. As a condition of her paid administrative leave, Dodd was "required to e-mail [Interim Talent Relations Director Rodney Nathan ("Nathan")] every regular HCC business day." Dkt. 93-18 at 2. Dodd asked Glaser to assist her in keeping her job, but he declined.

On April 20, 2021, HCC directed Dodd to meet with a Background Check Committee on April 22, 2021 to discuss the circumstances of her April 14, 2021 arrest. Dodd asked to reschedule the meeting to April 29, 2021 due to a medical appointment, and HCC complied. On April 29, 2021, Dodd's attorney asked to reschedule the meeting because it conflicted with a criminal court appearance related to Dodd's arrest. HCC again agreed to reschedule and moved the meeting to May 6, 2021. On May 4, 2021, a different attorney representing Dodd requested to further postpone the meeting to accommodate Dodd's medical condition and to

3

give him time to advise Dodd. HCC again agreed to postpone the meeting and moved it to May 20, 2021.

On May 10, 2021, Dodd's attorney sent HCC a copy of an EEOC Charge of Discrimination (the "Charge"), which was filed that same day. On the Charge, Dodd checked the boxes for sex, age, disability, retaliation, and other. The heading of Dodd's substantive complaint, however, states: "This Complaint is for Sex Discrimination, *Quid Pro Quo* Sexual Harassment, Discrimination Based on Disability and Retaliation." Dkt. 93-9 at 6.

On May 19, 2021, HCC hired Jackson Walker, LLP to investigate Dodd's May 10, 2021 Charge.

Dodd's employment with HCC ended when Nathan notified Dodd of HCC's intent not to renew her contract via letter dated May 21, 2021. Nathan outlined HCC's grounds for non-renewal:

> 1. Dr. Dodd has failed to report two different arrests in accordance with HCC Policy DH (Local).
>
> 2. The two recent charges, one a felony offense and one a misdemeanor offense[,] both occurred in the past two years and are still currently pending.
>
> 3. The underlying conduct of the two offenses involve[] offenses, which are inconsistent with the nature of Dr. Dodd's job duties and ethical standards as a faculty member.
>
> 4. The charges are categorize[d] as pending charges for Prohibited Offenses under DCB (Regulation)[.]

Dkt. 93-12 at 2. Nathan "did not know Dr. Dodd had filed an EEOC charge until after the College made the decision to non-renew her faculty contract." Dkt. 93-13 at 4. Nathan's recommendation that Dodd's contract be non-renewed was approved by HCC's Vice Chancellor Instructional Services and Chief Academic Officer, Dr. Norma Perez ("Perez"). Like Nathan, Perez "did not know Dr. Dodd had filed an EEOC charge until after the College made the decision to non-renew her faculty contract." Dkt. 93-40 at 2.

On May 27, 2021, Dodd filed a grievance regarding the proposed non-renewal of her contract. On June 3, 2021, Dodd's attorney submitted a supplement to her EEOC charge, complaining of a "pattern and practice of top HCC executives engaging in illicit sexual conduct with female subordinates," and "that HCC violated her ADA rights." Dkt. 93-9 at 15, 16. A grievance conference was held on June 7, 2021 and attended by Dodd, Dodd's counsel, HCC's Chief Human Resources Officer Janet May ("May"), and HCC's outside counsel. May determined that the decision to not renew Dodd's contract should stand for the reasons stated in the May 21, 2021 notification of non-renewal, but also because:

> 1. It is undisputed that you failed to report your April 2021 arrest to the College pursuant to HCC Policy DH (Local). While the information you presented shows you communicated with HCC employees on April 19, 2021, none of your communications included a report to your supervisor, Dr. Alan Ainsworth, that you had been arrested. You stated during the conference that you did not report the matter to Dr. Ainsworth during the weekend of April 17-18 because Dr. Ainsworth "does not respond to things over the weekend." Your explanation does not relieve you of your obligation to timely report the arrest. Notably, this is the second time you failed to report an arrest to the College as required by HCC Policy DH (Local).
>
> 2. During the grievance conference, you admitted you "pushed" your elderly neighbor with a broom and said, "Get the hell away from us!" You were then arrested for the felony charge of injury to an elderly individual. Your actions do not comport with the standards of conduct expected of the College's faculty members.

Dkt. 93-12 at 9.

On July 8, 2021, Dodd filed this lawsuit. She asserts the following claims: (1) Fourteenth Amendment due process and equal protection violations under 42 U.S.C. § 1983; (2) general discrimination, hostile work environment (per se sexual harassment and quid pro quo sexual harassment), and retaliation in violation of Title VII of the Civil Rights Act of 1964 and Chapter 21 of the Texas Labor Code; (3) retaliation in violation of Title VII, Chapter 21, and the Americans with Disabilities Act ("ADA"); and (4) failure-to-accommodate under the ADA. Defendants move for summary judgment on all claims.

5

## LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Harville v. City of Houston*, 945 F.3d 870, 874 (5th Cir. 2019) (cleaned up). At the summary judgment phase, I construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

To survive summary judgment, the nonmovant must "present competent summary judgment evidence to support the essential elements of its claim." *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may . . . consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2).

## EVIDENTIARY OBJECTIONS

Before turning to the summary judgment briefing, I must first rule on Defendants' Objections to and Motion to Strike Plaintiff's Summary Judgment Evidence ("Motion to Strike"). Dkt. 104. Specifically, Defendants object to and move to strike portions of Dodd's affidavit (Dkt. 100-14 at 7–9), and portions of the affidavit of Marlene London ("London") (Dkt. 99-11).

A.     DODD'S AFFIDAVIT

Defendants move to strike Dodd's affidavit as a sham. "[T]he 'sham-affidavit doctrine' . . . does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 477 (5th Cir. 2022) (quotation omitted). "However, not every discrepancy in an affidavit justifies disregarding it," and "the bar for applying the doctrine is a high one, typically requiring affidavit testimony that is inherently inconsistent with prior testimony." *Id.* (quotation omitted).

In their Motion to Strike, Defendants cite Dkt. 100-17 as Dodd's affidavit. That document, however, is unsigned and contains language not reflected in Dodd's signed affidavit (Dkt. 100-14 at 7–9).[2] When I evaluate Defendants' Motion to Strike regarding Dodd's *signed* affidavit, it is clear that the motion should be denied. Indeed, the only language "so markedly inconsistent with [Dodd]'s prior deposition as to constitute an obvious sham" is language in Dodd's *unsigned* affidavit. *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988); *see* Dkt. 107 at 5 (pointing out that Dodd's statement that Glaser continued to call/text her for months after the sex stopped is absent from her signed affidavit). Here, Dodd's *signed* affidavit "supplements, rather than contradicts, h[er] earlier deposition testimony." *Clark*, 854 F.2d at 766. Thus, Defendants' Motion to Strike is **DENIED** as to Dodd's signed affidavit.[3]

---

[2] In her opposition to the Motion to Strike, Dodd states that she "errantly attached an unsigned draft of [her] [a]ffidavit" to her summary judgment response. Dkt. 107 at 2. A fully executed affidavit is also attached to Dodd's summary judgment response. *See* Dkt. 100-14 at 7–9.

[3] As for Defendants' objections to portions of Dodd's affidavit as inadmissible hearsay, I deny those objections as moot because such "evidence does not affect the disposition of the summary judgment motion." *Lilly v. SSC Houston Sw. Operating Co.*, No. 4:20-cv-03478, 2022 WL 35809, at *3 n.2 (S.D. Tex. Jan. 4, 2022).

## B. LONDON'S AFFIDAVIT

Defendants move to strike the following portions of London's affidavit as "conclusory, speculative, and lacking in foundation":

- "Charles 'Chuck' Smith is an example of HCC's tolerant sexual misconduct policy regarding male executives abusing female subordinates." Dkt. 99-11 at p. 1, ¶ 2, sentence 1.
- "Additionally, Chancellor Maldonado reportedly asked HCC police officer Fedrick [sic] Portis, to receive a report about his (Maldonado's) subordinate female partner's husband hitting her." Dkt. 99-11 at p. 2, ¶ 6.
- "I personally observed HCC's custom where executive level and mainly male aggressors accused of sexual harassment were forgiven and not disciplined for their actions, especially if the aggressor was white or Hispanic." Dkt. 99-11 at p. 2, ¶ 7.

Dkt. 104 at 10.

"A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). "Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial and continuing the action would be useless." *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (quotation omitted). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

London's statement about Charles Smith is conclusory. London's statement about Maldonado is unsubstantiated, as evidenced by the word "reportedly." London's statement about HCC's custom is similarly unsupported. If London "personally observed" events, her declaration was the time to expound upon them, but she never did. For all these reasons, Defendants' Motion to Strike is **GRANTED** as to London's affidavit. Because these statements are inadmissible, I will not rely on them in evaluating whether Defendants are entitled to summary judgment.

With these evidentiary matters out of the way, I turn to the question of whether summary judgment is warranted.

## ANALYSIS

### A. DODD HAS ABANDONED HER RETALIATION AND FAILURE-TO-ACCOMMODATE CLAIMS

In their reply, Defendants argue that "Dodd's retaliation claims under Title VII, Chapter 21 and the ADA and her failure-to-accommodate claim under the ADA should be dismissed" because she failed to respond to Defendants' arguments regarding these claims. Dkt. 102 at 1.

"A plaintiff abandons claims when [she] fails to address the claims or oppose a motion challenging those claims." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022) (affirming grant of judgment on the pleadings to defendant); *see also Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (finding claims abandoned where plaintiff "failed to defend her . . . claim in both responses to the defendant's motion to dismiss"); *Vela v. City of Houston*, 276 F.3d 659, 678–79 (5th Cir. 2001) (affirming summary judgment in favor of defendant where "plaintiff never mentioned before the trial court a single fact that would trigger a genuine issue" (quotation omitted)); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983) (affirming summary judgment in favor of defendant because plaintiff "failed to present facts in support of its pleaded theories").

This is everything Dodd said regarding her retaliation or failure-to-accommodate claims in her response brief:

- "Plaintiff filed suit in July 2021, claiming unlawful discrimination, hostile work environment, and retaliation in violation of Title VII and 42 USC 1983." Dkt. 99 at 5 (failing to mention the ADA or her failure-to-accommodate claim).

- "Her claims include *quid pro quo* sexual harassment, hostile work environment, retaliation, Section 1983 color of law, and *Monell* liability against HCC and its decision-makers." *Id.* (again failing to mention the ADA or her failure-to-accommodate claim).

9

- "Whether Dodd can establish *prima facie* claims of harassment, hostile work environment or retaliation. Whether Dodd can prove pretext for retaliation. . . . [T]here is evidence to support a *prima facie* claim of . . . retaliation, and pretextual evidence of retaliation; HCC failed to provide reasonable accommodations under the [ADA]." *Id.* at 10.

- "Specifically, the evidence shows that Plaintiff was under an ADA accommodation at the time." *Id.* at 14.

- "[A]s her PTSD condition worsened when trying to deal with the sexual trauma she had endured with Glaser, Plaintiff's supervisor would not adjust the commendations [sic] even though Plaintiff presented not one, but two, doctor letters recommending the requested accommodations—the needed accommodations were not approved." *Id.* at 22.

- "Because her work environment was increasing in its hostility, Plaintiff filed her EEOC Charge in May 2021 and checked the 'continuing action' option, showing that the discrimination, retaliation, and harassment were ongoing." *Id.*

- "The facts delineated in the preceding section regarding retaliation are also supportive of Plaintiff's hostile work environment claim. There is sufficient evidence of continuing retaliation and hostile work environment to overcome a limitation defense. Such retaliation continued at least until May 2021 when Plaintiff filed her EEOC Charge." *Id.* at 23.

Notably, the two references to "pretext" on page 10 are the only discussion of pretext in Dodd's entire response brief. Additionally, there is no "preceding section regarding retaliation" in Dodd's response brief. *Id.*

Dodd cites the summary judgment record only twice in connection with retaliation or accommodation. First, Dodd drops a footnote regarding HCC's alleged retaliation against a different employee (Donny Leveston) for furnishing an affidavit in support of this litigation. *See* Dkt. 99 at 7 n.2. Of course, whether HCC retaliated against another employee has nothing to do with *Dodd*'s retaliation claims—if it does, Dodd fails to make the connection. Next, Dodd cites her deposition transcript to support her statement that "the evidence shows [she] was under an ADA accommodation." *Id.* at 14 (citing Dkt. 99-1 at 20). But the

10

deposition testimony Dodd cites mentions nothing about a disability or an accommodation. Dodd simply did not respond to Defendants' arguments on her retaliation and failure-to-accommodate claims, meaning she has abandoned them, and Defendants are entitled to summary judgment on these claims.[4]

### B. DODD'S SEXUAL HARASSMENT CLAIMS ARE TIME-BARRED

Dodd alleges sexual harassment in violation of Title VII and Chapter 21 based on her sexual relationship with Glaser. Defendants argue these claims are time-barred. Defendants are correct.

A plaintiff asserting Title VII or Chapter 21 claims must file a charge of discrimination within 300 days of the alleged unlawful employment practice. *See Washington v. Patlis*, 868 F.2d 172, 175 (5th Cir. 1989) (explaining that the work-sharing agreement between the Texas Commission on Human Rights and the EEOC results in a 300-day filing period). I will assume, without deciding, that Dodd can prove sexual harassment in violation of Title VII and Chapter 21. Even so, it is undisputed that Dodd's sexual relationship with Glaser "ended in late April 2020." Dkt. 100-17 at 3. Dodd filed her EEOC charge on May 10, 2021—more than a year later. Thus, Defendants argue that Dodd's sexual harassment claims are time-barred. Dodd does not dispute that she filed her EEOC charge more than 300

---

[4] Even if Dodd had not abandoned her retaliation and failure-to-accommodate claims, Defendants would still be entitled to summary judgment on these claims. "To state a claim for retaliation under Title VII, a plaintiff must show that . . . a causal connection exists between the protected activity and the adverse action." *Cabral v. Brennan*, 853 F.3d 763, 766–67 (5th Cir. 2017). Dodd cannot do this because the record shows that the cause for her termination was her repeated failure to report her arrests. Dodd contends in a footnote that "HCC kept a male convicted felon employed and promoted him (Michael Edwards) to be a president of one of its campuses while claiming it needed to get rid of a competent non-convicted female." Dkt. 99 at 22 n.5. But Michael Edwards is not a suitable comparator because, **unlike Dodd**, "Dr. Edwards **disclosed** his criminal record to the College." Dkt. 93-3 at 2 (emphasis added). As for her failure-to-accommodate claim, Dodd must show that "the employer failed to make reasonable accommodations." *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 837 (5th Cir. 2020) (quotation omitted). Dodd's "failure-to-accommodate claim fails at a . . . fundamental level" because she "fails to pinpoint any request(s) that were not subsequently accommodated." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 587 (5th Cir. 2020) (quotation omitted).

11

days after her sexual relationship with Glaser ended. Rather, Dodd contends that the continuing violations doctrine and hostile work environment theory apply to preclude summary judgment. *See Mack v. John L. Wortham & Son, L.P.*, 541 F. App'x 348, 355 (5th Cir. 2013) (recognizing that "the continuing violations doctrine and the hostile work environment theory" are the two exceptions to the rule that "a discrimination claim not brought within 300 days of the alleged discriminatory act is time-barred"). Both arguments are unavailing.

"To determine whether alleged discriminatory acts are related closely enough to constitute a continuing violation, [courts look to] the following three non-exhaustive factors: (1) subject matter, (2) frequency, and (3) degree of permanence." *Id.* at 356. "If the alleged acts involve the same type of discrimination, occur frequently, and indicate to the employee that the continued existence of adverse consequences is likely, it is probable that they rise to the level of continuing violations." *Id.*

Dodd's continuing violations theory fails at the first step: subject matter. Dodd's own theory of the case is that "everyone in the English department knew not to mess with [Dodd] or Trustee Glaser would intervene." Dkt. 99 at 21. In other words, Dodd does not complain that her sexual relationship with Glaser *created* a hostile work environment—she complains that her sexual relationship with Glaser *ameliorated* a pre-existing hostile work environment. *See* Dkt. 93-9 at 6 ("[Dodd] . . . shared some of her struggles with HCC administrators in her department [with Glaser] and expressed that she was experiencing discriminatory treatment and a hostile environment. [Glaser] concurred that HCC does not support faculty."). Only "*after* Glaser withdrew his protection" does Dodd claim that her job "became a daily obstacle course just to survive." Dkt. 99 at 21 (emphasis added). Thus, even if Dodd's allegations about her allegedly hostile work environment were substantiated, they are disconnected from Glaser's alleged sexual harassment.

12

The larger problem, however, is that Dodd's allegations of a hostile work environment—beyond Glaser's sexual harassment—are unsubstantiated. Dodd's only argument in support of a hostile work environment theory is this: "Such an analysis necessarily requires a fact-intensive examination. The facts delineated in the preceding section regarding retaliation are also supportive of Plaintiff's hostile work environment claim." *Id.* at 23. The problem with this argument? There is no "preceding section regarding retaliation" in Dodd's responsive briefing. "'Judges are not like pigs, hunting for truffles buried in briefs.'" *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quotation omitted).

Summary judgment is the time for a fact-intensive examination, but Dodd fails to carry her burden of pointing to specific parts of the summary judgment record in support of her hostile work environment claim. Moreover, I have reviewed the entire summary judgment record, despite having no obligation to do so. I am confident that Dodd's allegations of a hostile work environment are just that—allegations. There simply is no evidence in the record to substantiate that Dodd's supervisor subjected her to a hostile work environment.

For example, Dodd contends that "[f]rom April 2020 [the end of her sexual relationship with Glaser] to her EEOC Charge in May 2021, [she] lived every day on a virtual obstacle course of confrontations and conflict." Dkt. 99 at 21. Specifically, Dodd alleges that she "had to deal with . . . accusations by supervisors that she was not to be trusted because of her 'stalking' Glaser." *Id.* But Dodd never specifies who these supervisors were, when or how such accusations were made,

13

or the contents of such allegations. Thus, even if this allegation were connected to Glaser's sexual harassment or qualified as objectively offensive conduct,[5] it does not create a genuine issue of fact because it is unsupported by the record.

Similarly, Dodd complains that her supervisor refused to "adjust the commendations [sic] even though [Dodd] presented not one, but two, doctor letters recommending the requested accommodations." Dkt. 99 at 22. Again, Dodd fails to cite the summary judgment record to support this argument. She never specifies what accommodations she requested or when she requested them. Moreover, allegations about her supervisor's failure-to-accommodate are unrelated to Glaser's alleged sexual harassment claim or a hostile work environment theory.

Because Dodd cannot establish a continuing violation or hostile work environment after her sexual relationship with Glaser ended, her Title VII and Chapter 21 claims are time-barred.

## C.  DODD CANNOT ESTABLISH *MONELL* LIABILITY FOR HER § 1983 CLAIMS

Dodd's remaining claims are her due process and equal protection claims under § 1983. Specifically, Dodd alleges that Glaser deprived her of due process and the right to bodily integrity when he engaged in non-consensual sexual contact with her on January 19, 2020. *See* Dkt. 1 at 20–22. I will overlook the mountain of evidence suggesting that Dodd's sexual relationship with Glaser was consensual and assume, without deciding, that Dodd's constitutional rights were violated. I will also assume, without deciding, that Glaser was acting under color of state law—despite picking Dodd up from her house and taking her to a bar, away from HCC's campus—because they allegedly discussed college business. *See* Dkt. 1 at 21 ("As a state actor, purportedly discussing college business with Plaintiff at a bar, Glaser

---

[5] "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (quotation omitted).

was cloaked with the imprimatur of the college."). Even so, Dodd cannot establish municipal liability for Glaser's sexual harassment.

In *Monell v. N.Y.C. Department of Social Services*, 436 U.S. 658 (1978), "the Supreme Court held that Congress intended § 1983 to apply to local government entities as well as to persons." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994). The Fifth Circuit has explained the contours of *Monell* liability:

> Under the decisions of the Supreme Court and this court, municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom. *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such a reading. Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; ***isolated unconstitutional actions by municipal employees will almost never trigger liability***. The three attribution principles identified here—a policymaker, an official policy and the "moving force" of the policy—are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself. Mistakes in analyzing section 1983 municipal liability cases frequently begin with a failure to separate the three attribution principles and to consider each in light of relevant case law.

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (emphasis added) (cleaned up).

It is undisputed that HCC's Board of Trustees is the policymaker for HCC and that HCC's policies prohibit sexual harassment. Accordingly, Dodd can establish liability only by showing that HCC "maintained a practice of [tolerating sexual harassment] that was a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984), *on reh'g*, 739 F.2d 993 (5th Cir. 1984) (quotation marks omitted). Dodd cannot make this showing. Dodd's only "evidence" of custom is either speculation,

a mischaracterization of the record, or allegations that cut against her theory. I will address Dodd's baseless allegations in the order they are made.

To start, Dodd's allegations about Glaser's alleged sexual harassment of her, even if true, cannot equate to a custom representing municipal policy because "isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578. So, Dodd argues that Glaser "felt he could sexually 'misuse' her" because Maldonado was "having sex with his own subordinate female staffer." Dkt. 99 at 16. But the only evidence Dodd cites in support of this assertion is inadmissible hearsay from her own deposition and unfounded testimony. *See* Dkt. 99-1 at 32 (admitting she "heard the gossip" about Maldonado); Dkt. 99-10 at 17 (HCC Trustee David Wilson answering questions about Maldonado's alleged affair with an associate without establishing how or that he knew of such an affair). Thus, I need not determine whether Maldonado having an affair with a subordinate could contribute to a custom of tolerating sexual harassment because there is no evidence of such an affair in the first place.

Dodd also alleges that Maldonado "reportedly asked an HCC police officer, Frederick Portis, to take down a report of domestic assault concerning his subordinate female partner's husband accused of roughing her up." Dkt. 99 at 18. This statement makes no sense because the record evidence that Dodd cites in support concerns Maldonado calling HCC police to his office to facilitate a woman *reporting* domestic violence. *See* Dkts. 99-12 at 33, 99-13 at 3. Thus, the evidence shows Maldonado *opposing* violence against a woman, not tolerating it.

Dodd claims that HCC's Chief Facilities Officer "Charles 'Chuck' Smith . . . was actually found guilty of sexually harassing females and allowed to continue working at HCC. . . . He was only made to leave after being counseled out by HCC." Dkt. 99 at 17. This is not evidence of a custom of sexual harassment. Dodd's own allegation admits that HCC investigated the allegations against Smith and caused him to leave. Moreover, the record shows that HCC received a complaint about Smith in May 2017 and promptly initiated an investigation, after which Smith

16

resigned in June 2017. *See* Dkt. 93-50 at 2. This is evidence of HCC's *in*tolerance of sexual harassment.

Next, Dodd asserts that "Rogelio Anastasia repeatedly had sex with a subordinate female employee, and was caught having sex on his work desk with the female and was allowed to continue working at HCC without any reasonable corrective action being taken by Maldonado or his administration." Dkt. 99 at 17–18. The only "evidence" Dodd cites in support this assertion is London's affidavit, which is a nearly verbatim copy of Dodd's allegation, but with the closing addition that Anastasia was "allowed to exit via a resignation." Dkt. 99-11 at 2. Even if true, there are too many facts missing for this otherwise unsubstantiated allegation to contribute to a custom of tolerating sexual harassment. What position did Rogelio Anastasia hold? What position did the female employee hold? Was the alleged sexual conduct consensual? When did this event take place? London's affidavit states that no "reasonable" corrective action was taken, which is not the same thing as no corrective action. So what action was taken, and when was that action taken in relation to HCC learning of the alleged misconduct? Neither Dodd or London offer any of these facts, all of which are relevant to determining whether this was even an incident of sexual harassment, much less whether there was a custom of HCC tolerating sexual harassment.

Dodd further alleges that "William 'Bill' Carter engaged in continual sexual acts on the job with a subordinate female employee without corrective action being taken," but she cites nothing to support this statement. Dkt. 99 at 18. I repeat: Dodd cites no summary judgment evidence whatsoever to support this statement that, were it not made in the context of litigation, might otherwise be considered defamatory. *See James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982) ("Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made."); *but see* FED. R. CIV. P. 11(b)(1), (3) ("By presenting to the court a pleading, . . . an attorney . . . certifies that to the best of the person's

17

knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; . . . [and] (3) the factual contentions have evidentiary support.").

Dodd also contends that her supervisor, Ainsworth, "was accused of a sexual assault of one of his female instructors in the HCC parking lot and no corrective action was taken against him." Dkt. 99 at 18. But the record shows that HCC promptly investigated this allegation and could not substantiate it—more evidence of HCC's *in*tolerance of sexual harassment. *See* Dkt. 93-50 at 2–3.

Lastly, Dodd alleges that two HCC Police officers "failed to report sexual harassment engaged in by HCC officers." Dkt. 99 at 18. But again, Dodd cites *nothing* to support this salacious allegation. *See* FED. R. CIV. P. 11(b)(1), (3).

\* \* \*

Dodd can point to no evidence that HCC's Board of Trustees has a custom of tolerating sexual harassment. Thus, Dodd cannot establish *Monell* liability.

## CONCLUSION

For the reasons explained above, Defendants' Motion to Strike (Dkt. 104) is **GRANTED IN PART** and **DENIED IN PART**. More specifically, Defendants' Motion to Strike is **DENIED** as to Dodd's signed affidavit and **GRANTED** as to the specific portion of London's affidavit to which Defendants object. I further recommend that Defendants' Motion for Summary Judgment (Dkt. 93) be **GRANTED**.

Finally, the parties concede that no summary judgment materials should be sealed in this case. *See* Dkts. 125, 127. Accordingly, the Clerk is directed to unseal Dkts. 92, 93, 99, 100, and all exhibits attached to these docket entries.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 16th day of January 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE